UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| CARLA HENDERSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17 CV 2074 (JMB) |
| | ) | |
| MISSOURI DEPARTMENT OF SOCIAL SERVICES, FAMILY SUPPORT DIVISION, REHABILITATION SERVICES FOR THE BLIND, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P. Plaintiff has filed a response in opposition and the issues are fully briefed.[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff Carla Henderson, a legally-blind African American woman, alleges that defendant Missouri Department of Social Services[2] denied her a position as the manager of a vending facility based on her race and disability. She further alleges that defendant failed to comply with the outcome of an arbitration proceeding before the United States Department of Education pursuant to which she was to be awarded a vending facility. She brings claims for impairment of her right to contract in violation of 42 U.S.C. § 1981 (Count I); disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq*. (Count II), and the

---

[1] Defendant has also filed a motion in the alternative, asking the Court to stay proceedings pending final action before an arbitration panel.

[2] The defendant is the Missouri Department of Social Services, Family Support Division, Rehabilitation Services for the Blind.

Rehabilitation Act, 29 U.S.C. § 705 (Count III); deprivation of her civil rights in violation of 42 U.S.C. § 1983 (Count IV); retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3, and the ADA (Count V); and a claim for declaratory judgment under the "Uniform Arbitration Act" (Count VI). Defendant moves for summary judgment, arguing that the Arbitration Panel retains exclusive jurisdiction over plaintiff's claims, that plaintiff's claims in Counts I and IV are barred by sovereign immunity; that her claims in Counts I through V are barred by the Randolph-Sheppard Act, 20 U.S.C. §§ 107 *et seq.*; that she has failed to state a claim for relief under the ADA and Rehabilitation Act; and that declaratory relief is not available on review of an arbitration award.[3]

## I. The Randolph-Sheppard Act

Congress enacted the Randolph-Sheppard Act (RSA) in 1936 to provide employment opportunities to individuals with vision impairments. 20 U.S.C. § 107(a). The RSA authorizes licensed blind persons "to operate vending facilities on any Federal property," id., and requires the federal government and cooperating state licensing agencies to give priority to licensed blind vendors in "the operation of [these] vending facilities," § 107(b). Blind licensees operating vending facilities on federal property earn a percentage of all income generated by vending machines located on that property, even if those machines are not operated by program participants. § 107d–3(a).

The RSA creates partnerships between the federal government and states that choose to participate. Jones v. DeNotaris, 80 F. Supp. 3d 588, 590 (E.D. Pa. 2015). On the federal side, the RSA assigns to the United States Secretary of Education rulemaking, information-gathering, and

---

[3] Defendant argues that plaintiff's claim in Count VI is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16. As discussed below, the Court finds that arbitration awards under the RSA are reviewable under the Administrative Procedures Act, 5 U.S.C. § 706.

oversight responsibilities. Id. (citing § 107a(a)). The Department of Education "designate[s] the State agency for the blind in each State . . . to issue licenses to blind persons" to operate vending facilities on federal property. § 107a(a)(5). The state licensing agencies, in turn, both select the locations for vending facilities and the operators of the facilities, "giv[ing] preference to blind persons who are in need of employment." § 107a(b)-(c).

The RSA provides a grievance procedure for "dissatisfied" blind vendors: state licensing agencies participating in the program must agree "to provide to any blind licensee dissatisfied with any action arising from the operation or administration of the vending facility program an opportunity for a fair hearing." § 107b(6). If the licensee remains dissatisfied after the hearing, he or she may seek binding arbitration through the Department of Education. § 107d-1(a). "[T]he decision of such panel shall be final and binding on the parties," but is "subject to appeal and review as a final agency action for purposes of" judicial review in accordance with the Administrative Procedure Act (APA), 5 U.S.C. § 706. North Carolina Division of Services For The Blind, v. U. S. Dep't Of Educ., No. 1:17CV1058, 2019 WL 3997009, at *2 (M.D.N.C. Aug. 23, 2019); see also Jones, 80 F. Supp. 3d at 591 ("Although the RSA nowhere creates a private cause of action," judicial review of the panel's decision is available through the APA). On review, the Court "must uphold [an RSA arbitration panel] decision if it is supported by 'substantial evidence,' and is not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Id. (quoting Browder v. U.S. Dep't of Educ., 238 F.3d 410 (4th Cir. 2000) (per curiam)). "In determining whether final agency action, such as an RSA arbitration award, violates [S]ection 706(2)(A) of the APA, [the Court] perform[s] only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes, and

3

whether the agency has committed a clear error of judgment." Id. (alterations in original; internal quotation marks omitted).

   **II.   Background**[4]

Plaintiff is a licensed vending manager and participant in the Blind Enterprise Program (BEP), the licensing agency that administers the Randolph-Sheppard Act (RSA) for the State of Missouri. On February 28, 2014, Larry Branson, the BEP manager, notified licensed managers of an opening for a manager at a cafeteria/convenience store, identified as VF #2. Plaintiff submitted a bid on March 5, 2014, and interviewed with the executive committee of the Blind Vendors of Missouri on March 22, 2014. Branson also attended the interview. Christopher White, a legally-blind Caucasian man, was selected for the manager position at VF #2.

Plaintiff requested an administrative review, alleging that she was discriminated against on the basis of race and gender and that the BEP failed to properly support her in the management of her current facility, which affected her ability to compete for other facilities. The review proceeding upheld the decision to select Mr. White for the VF #2 manger position. Plaintiff next sought a fair hearing, which was conducted on June 27, 2014. The decision to select Mr. White was again upheld. Plaintiff then exercised her right for an arbitration hearing from the United States Department of Education.

A three-person arbitration panel held a hearing on August 9, 2016. In a decision issued on October 13, 2016, the arbitration panel found that Branson made false disparaging statements about plaintiff that resulted in her not being awarded VF #2 and that her bid was denied based on

---

[4] The evidentiary record on summary judgment is comparatively small and the Court relies on the decision of the U.S. Department of Education Arbitration Proceedings, issued on October 13, 2016, in formulating the background statement. Henderson v. Missouri Department of Social Service Family Support Division, Rehabilitation Services for the Blind, No. R-S/15-02 [Doc. # 39-1].

4

racism and discrimination. The panel directed the RSB to award plaintiff "the next comparable Level 4 facility with a history of generating profitable income that becomes available and mutually agreed to by" plaintiff and the RSB. The arbitration panel also retained jurisdiction to consider any issue arising from implementation of its award.

In April 2018, plaintiff asked to be awarded the contract for a Level 4 facility located at Fort Leonard Wood pursuant to the arbitration award. See e-mail exchange [Doc. # 66-1]. James Brinkmann, supervisor of the BEP, informed her that the contract would not be awarded to her because the facility was not comparable to VF #2. Id. According to a spreadsheet prepared by Mr. Brinkmann, VF #2 served approximately 200 meals a day, while the Fort Leonard Wood facility averaged more than 28,000 meals a day. Similarly, VF #2 averaged 7 employees while Fort Leonard Wood had 947 employees. Finally, VF #2's gross income in 2017 was $837,000 while Fort Leonard Wood's income for the same period was in excess of $35 million. [Doc. # 75].

Mr. Brinkmann states that between October 25, 2016, and April 19, 2019, ten Level 3 and Level 4 facilities were offered to plaintiff. Plaintiff declined all ten facilities, including VF #2 which she was again offered on April 19, 2019. James Brinkmann Second Aff. ¶¶ 8-10 [Doc. # 70-3].

In July 2017, plaintiff filed this action in which she reasserts the allegations she asserted before the arbitration panel: that the BEP violated her civil rights and discriminated against her on the basis of her disability and race by not selecting her for the opening at VF #2. In particular, plaintiff alleges that she applied for VF #2, that Larry Branson made false statements about her to the decisionmakers, and that a white male applicant was awarded VF #2. "Third Amended Complaint"[5] at ¶¶ 12-19 [Doc. # 39]. In this proceeding, plaintiff claims in Count I that defendant

---

[5] The document is actually plaintiff's second amended complaint.

"fail[ed] and refus[ed] to provide [her] with essentially the same opportunity to make contracts for employment as her white, male, able-bodied counterparts," in violation of 42 U.S.C. § 1981. ¶ 34. Similarly, she claims in Count IV that that defendant "fail[ed] and refus[ed] to provide [her] with a fair and unadulterated application process for a state-run employment program in which [she] was qualified to participate" on the basis of her race and disability, in violation of 42 U.S.C. § 1983. ¶ 48. In Counts II and III, she claims that she was denied participation in and excluded from a program providing benefits for the disabled in violation of the ADA and Rehabilitation Act. ¶¶ 39, 44. In Count V, brought under Title VII and the ADA, plaintiff claims that she was denied the VF #2 and Fort Leonard Wood facilities in retaliation for an earlier grievance she filed against Branson. ¶¶ 52-57. For Counts I through V, plaintiff seeks compensatory and punitive damages and an order enjoining future acts of discrimination. In Count VI, entitled "Declaratory Judgment — Uniform Arbitration Act," plaintiff asks the Court to "issue an Order that the award by the Arbitration Panel is confirmed in all respects." In her opposition to defendant's summary judgment motion, plaintiff clarifies that she brings this claim pursuant to the Federal Arbitration Act, 9 U.S.C. § 9. [Doc. # 66].

### III. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

**IV.    Discussion**

   **A.    "Final Agency Action"**

The APA provides for judicial review of (1) an agency action "made reviewable by statute" and (2) a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Defendant argues that there is no "final agency action" within the meaning of the APA because the arbitration panel retained jurisdiction to review issues arising from implementation of its award. Defendant relies on Bennett v. Spear, 520 U.S. 154, 177–78 (1997), in which the Supreme Court held that two conditions must be satisfied for an agency action to be final. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Id. The Bennett analysis does not apply in this case, however, because the RSA expressly provides for judicial review of an arbitration decision. 20 U.S.C. § 107d-2 (arbitration decisions are "subject to appeal and review as a final agency action for purposes of" the APA) (emphasis added); see also Sauer v. United States Dep't of Educ., 668 F.3d 644, 650 (9th Cir. 2012) ("An arbitration

7

decision under the [RSA] is 'subject to appeal and review as a final agency action' under the standards set forth in the [APA]." (quoting 20 U.S.C. § 107d-2(a)); SourceAmerica v. United States Dep't of Educ., No. 1:17-CV-893, 2018 WL 1453242, at *5 (E.D. Va. Mar. 23, 2018) ("The language stating that panel decisions are reviewable as final agency actions strongly suggests that Congress contemplated judicial review of RSA arbitration panel decisions."). Thus, to the extent that the decision of the arbitration panel is properly before the Court, the express statutory language of the RSA makes that decision reviewable under the APA.

B. Sovereign Immunity

Defendant is an agency of the State of Missouri and argues that plaintiff's claims under 42 U.S.C. § 1981 and § 1983 are barred by sovereign immunity. Plaintiff has not refuted this argument.

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." Church v. Missouri, 913 F.3d 736, 742 (8th Cir. 2019) (quoting Virginia Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 253 (2011)). Missouri's state sovereign immunity applies unless "it is waived or a statutory or recognized common law exception, such as consent, is applicable." Id. (quoting Metropolitan St. Louis Sewer Dist. v. City of Bellefontaine Neighbors, 476 S.W.3d 913, 914 (Mo. banc 2016)); see also Div. of Employment Sec., Missouri v. Bd. of Police Commissioners, 864 F.3d 974, 980 (8th Cir. 2017) ("In Missouri, sovereign immunity is the rule rather than the exception."). Courts "give effect" to a state's waiver of sovereign immunity "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." Church, 913 F.3d at 743. Missouri's immunity from suit has not been waived for the purposes of claims under § 1981 and § 1983. See Rodgers v. Univ. of Missouri Bd. of Curators, 56 F. Supp. 3d 1037, 1050 (E.D. Mo.

2014) ("Congress has not overridden the States' immunity with respect to the plaintiff's claims under 42 U.S.C. §§ 1981 [and] 1983.") Defendant is entitled to summary judgment on plaintiff's claims in Counts I and IV.

        C.        Plaintiff's Claims under the ADA, Rehabilitation Act, and Title VII

Plaintiff alleges that she was subjected to discrimination and retaliation in violation of the ADA, the Rehabilitation Act, and Title VII. Her pleadings are vague with respect to the exact violation she contends defendant has committed and thus the Court has had to look to the substance of her allegations, rather than the form, to determine the nature of her claims.[6] It is clear to the Court that plaintiff's allegations arise from her dissatisfaction with BEP's decisionmaking in the awarding of facilities to licensed vendors. Defendant argues that her ADA, Title VII, and Rehabilitation Act claims fail because all claims arising from a vendor's dissatisfaction with the BEP's implementation of the RSA must be addressed through the RSA's remedial scheme.

Plaintiff argues that the administrative process set forth in the RSA is optional. She quotes (without citation) the following language:

> Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program <u>may</u> submit to a State licensing agency a request for a full evidentiary hearing, which shall be provided by such agency in accordance with section 107b(6) of this title. If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he <u>may</u> file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

---

[6] In Count II, plaintiff alleges that she was "deni[ed] and exclu[ded] from a program benefit for the benefit of a non-disabled individual with lesser qualifications" in violation of the ADA. ¶ 39. It is not clear, however, whether she is claiming discrimination in employment under subchapter 1, 42 U.S.C. §§ 12111 *et seq.*, or in access to public services, programs, or activities under subchapter 2, 42 U.S.C. §§ 12131 *et seq.* In Count III, plaintiff alleges that she was "denied and excluded from a program which provides an opportunity for employment for specifically disabled individuals who are blind" in violation of the Rehabilitation Act. ¶ 44. In Count V, brought under Title VII and the ADA, plaintiff alleges that she was denied the VF #2 and Fort Leonard Wood facilities in retaliation for an earlier grievance she filed against Branson. ¶¶ 52-57. The Title VII provision plaintiff cites, 42 U.S.C. § 2000e-3(a), pertains to retaliation in the employment context.

20 U.S.C. § 107d-1(a) (emphasis added).

Contrary to plaintiff's position, courts have determined that arbitration under the RSA is a mandatory administrative prerequisite for aggrieved vendors seeking judicial relief. Kansas by & through Kansas Dep't for Children & Families v. SourceAmerica, 874 F.3d 1226, 1243 (10th Cir. 2017). The RSA's arbitration provisions "create[] a comprehensive scheme for the administration of disputes arising from violations of the RSA." Kentucky, Educ. Cabinet, Dep't for the Blind v. United States, 424 F.3d 1222, 1228 (Fed. Cir. 2005). "In the absence of a clear indication to the contrary, Congress's creation of a comprehensive remedial scheme is a strong indication that the scheme prescribed by statute was intended to be exclusive." Id. (citing United States v. Babcock, 250 U.S. 328, 331 (1919) ("[W]here a statute creates a right and provides a special remedy, that remedy is exclusive.")); see also Comm. of Blind Vendors of D.C. v. D.C., 28 F.3d 130, 135 (D.C. Cir. 1994) ("[T]he text of the Act manifests Congress's intent that aggrieved vendors pursue their administrative remedies before resorting to Article III adjudication).

Here, of course, plaintiff did pursue her administrative remedies under the RSA with respect to the awarding of the VF #2 facility through both the fair hearing and arbitration stages. What is more, she prevailed at arbitration. In opposition to summary judgment, she argues generally that she experienced additional discrimination that is not subject to the RSA. Plaintiff's Opposition at 3 (while plaintiff "initially avail[ed] herself of the process to address the vending assignment issue," she "found that she was further violated because of her race and disability."). [Doc. # 66]. Plaintiff does not identify any specific discriminatory conduct that occurred after the arbitration award in support of her assertion, however. To the extent that plaintiff relies on defendant's refusal to award her the Fort Leonard Wood facility in satisfaction of the arbitration, that claim fails. The unrefuted evidence establishes that the Fort Leonard facility was not available

under the arbitration award because it was not comparable to the VF #2 facility and thus its denial alone cannot serve as evidence of actionable discrimination.

Plaintiff also cites deposition testimony from James Brinkmann regarding the assignment of other facilities to sighted individuals. Brinkman Dep. at 64-67. Any claim based on these assignments fails, however, because she did not exhaust her RSA remedies. Furthermore, she made no allegations regarding these assignments in her complaint and she cannot now hope to defeat a properly supported summary judgment motion by introducing new allegations.

Plaintiff argues generally that she has remedies for discrimination in her employment under Title VII, the ADA, and the Rehabilitation Act, that are separate from any cause of action under the RSA. It is not clear to the Court that her relationship with the BEP as a licensed vendor qualifies as an employment relationship. Assuming that the parties' relationship can be so characterized, however, the antidiscrimination statutes plaintiff cites require employees to file a charge of discrimination with the Equal Employment Opportunity Commission or the Missouri Human Rights Commission before filing suit, a step plaintiff has not undertaken here. 42 U.S.C. § 2000e-5(e)(1), (f)(1) (Title VII); 42 U.S.C. § 12117 (making Title VII provisions applicable to ADA); 29 U.S.C. § 794a (making Title VII provisions applicable to Rehabilitation Act).

Defendant will be granted summary judgment on Counts II, III, and V of plaintiff's complaint.

### D. Plaintiff's Arbitration Claim

In Count VI, plaintiff asks the Court to affirm the award by the arbitration panel, citing the Uniform Arbitration Act. She clarifies in her opposition to summary judgment that she intends to bring this claim under the Federal Arbitration Act, 9 U.S.C. § 9. She also states, however, that she "is not seeking review of the award. She is seeking enforcement due to the fact that the defendant

has failed to comply with the award in over two years." [Doc. # 66 at 6]; see also id. at 5 ("The time for review of the Arbitration Award has long since expired."). Such "obdurate and recalcitrant behavior" deserves strong consideration for an award of attorney's fees, she asserts. Id. at 6. The arbitration panel itself rejected plaintiff's request for attorney's fees, finding that it was not authorized to award such fees. [Doc. # 39-1 at 25 (citing Wisconsin v. U.S. Dep't of Educ., 667 F. Supp. 2d 1007, (W.D. Wisc. 2009) for proposition that "the America Rule governs and all parties must pay their own [attorney's] fees.")

As noted above, arbitration decisions under the RSA are "subject to appeal and review as a final agency action under the standards set forth in the Administrative Procedure Act (APA)." Sauer, 668 F.3d at 650 (quoting 20 U.S.C. § 107d-2(a) ); see also Comm. of Blind Vendors v. District of Columbia, 28 F.3d 130, 131-32 (D.C. Cir. 1994) ("The arbitration panel's decision is binding and subject to judicial review as final agency action under the Administrative Procedure Act (APA)."); Fillinger v. Cleveland Soc. For Blind, 591 F.2d 378, 380 (6th Cir. 1979) ("The 'final agency action' on which § 107d-2 of the Randolph-Sheppard Act premises judicial review is, by the terms of the statute, to be construed under the Administrative Procedure Act (APA)."); Jones, 80 F. Supp. 3d at 599 ("[T]he procedures specified delimit the breadth of the very right of action— judicial review, pursuant to the Administrative Procedure Act, of the decision of the Secretary of Education's arbitration panel."); Wisconsin Dep't of Workforce Dev., Div. of Vocational Rehab. v. U.S. Dep't of Educ., 667 F. Supp. 2d 1007, 1015–16 (W.D. Wis. 2009) ("An arbitral award under the Randolph-Sheppard Act is reviewed as a final agency action of the United States Department of Education under the standards set forth in the Administrative Procedures Act."); Smith v. Rhode Island State Servs. for Blind & Visually Handicapped, 581 F. Supp. 566, 572-73 (D.R.I. 1984) ( "[T]he arbitration award is subject to review as a final agency action in pursuance

of the applicable provisions of the Administrative Procedure Act."). The Court has not found any authority to support the proposition that the arbitration award can be reviewed under the Federal Arbitration Act, as plaintiff requests, rather than the APA. See <u>Maryland State Dep't of Educ. Div. of Rehab. Servs. v. United States Dep't of Educ. Rehab. Servs. Admin.</u>, No. CV CCB-17-1383, 2018 WL 4604305, at *7 (D. Md. Sept. 25, 2018) (rejecting request to review decision of RSA arbitration panel under FAA).

Because plaintiff seeks a form of relief to which she is not entitled, the Court will grant defendant's motion for summary judgment on plaintiff's claim in Count VI.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. # 55] is **granted**.

**IT IS FURTHER ORDERED** that defendant's alternative motion to stay proceedings [Doc. # 58] is **denied as moot**.

A separate Judgment will accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of October, 2019.